**FORDYCE CONCRETE, INC., Plaintiff,**

v.

**MACK TRUCKS, INC., et al., Defendants.**

**Civ. A. No. 81-2041.**

United States District Court, D. Kansas.

March 17, 1982.

Dennis L. Horner and Martha Ridgway Schmid of the firm of Horner, Duckers & Cornwell, Kansas City, Kan., for plaintiff.

Edmund S. Gross of the firm of Weeks, Thomas & Lysaught, Kansas City, Kan., for defendant Mack Trucks, Inc.

Charles A. Getto of the firm of McAnany, Van Cleave & Phillips, Kansas City, Kan., for defendant Reynolds Metals Co.

## MEMORANDUM AND ORDER

EARL E. O'CONNOR, Chief Judge.

Defendant Mack Truck, Inc., and defendant Reynolds Metals Company have filed respective motions for summary judgment on the grounds (1) that plaintiff's warranty claim is barred by the four-year statute of limitations pursuant to K.S.A. 84–2–725, and (2) that the damages suffered by plaintiff were solely economic loss and cannot support a strict liability claim. In its memorandum in opposition to defendants' motions, plaintiff does not contradict the assertion that its warranty claim is barred by the controlling statute of limitations, but argues that its strict liability claim is proper because plaintiff seeks recovery for physical damage to property, not economic loss or the cost of repairing the defective product. In addition, plaintiff has filed a motion to amend the petition alleging negligence on the part of the defendants, which defendants oppose. Having considered the helpful briefs submitted by the parties and the oral arguments presented by counsel for plaintiff and for defendant Mack, we are now ready to rule upon these motions.

The following facts are undisputed. On March 21, 1975, defendant Mack Trucks, Inc., (hereinafter Mack) delivered chassis No. RL 685LS–26135 to Ash Grove Cement, which was the parent corporation of plaintiff Fordyce. Defendant Mack knew the chassis was to be used as a concrete truck, but plaintiff arranged for the purchase and installation of the truck mixer assembly. The frame of the chassis broke on May 21, 1979, causing the cab and mixer first to separate and then to collide with each other. Fordyce filed suit against Mack on January 21, 1981, alleging breach of implied warranties and strict liability for sale of a product in a dangerous and defective condition. On April 2, 1981, Fordyce filed suit alleging Reynolds Metal Company had designed, manufactured and built the frame of the Mack truck and was strictly liable for damage caused by its dangerous and defective condition.

Defendants argue that the statute of limitations bars plaintiff's warranty claim.

The express warranty covering the frame side rails was the Mack Standard Vehicle Warranty for 200,000 miles or 36 months, whichever came first. The warranty contained the following provision: "This warranty is made expressly in lieu of any other warranties, expressed or implied, including any implied warranty of merchantability or fitness for a particular purpose, and of any other obligation or liability on the part of the manufacturer including, without limitation of the foregoing, consequential and incidental damages."

■ Pursuant to § 1–102 of the Kansas Uniform Commercial Code (hereinafter UCC), K.S.A. 84–1–102, this sale involves a transaction in goods as defined in § 2–105(1) of the UCC, K.S.A. 84–2–105(1), and is therefore covered by Article 2 of the UCC. The controlling statute of limitations on the warranty claim, set forth at § 2–725, K.S.A. 84–2–725, provides in pertinent part:

(1) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it.

(2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

The warranty cause of action accrued on March 21, 1975, when the Mack chassis No. RL 685LS–26135 was delivered. Since the action before us was commenced on January 21, 1981, more than four years after delivery of the chassis, plaintiff's warranty action is barred by the four-year statute of limitations, K.S.A. 84–2–725. Therefore, the defendants' motions to dismiss plaintiff's warranty claim must be granted.

As grounds for summary judgment on plaintiff's strict liability claim, defendants contend that the total recovery sought by plaintiff is for damage to the Mack truck, the manufactured product. Defendants argue this is a purely economic loss that is not recoverable in a strict liability claim. In response plaintiff argues that the damages it seeks covers injury to the cab and to the cement mixer mounted on the frame, but not for the cost to repair the frame or for "economic losses" such as loss of use of the truck, loss of profits resulting from damage to the truck, or the cost of renting a temporary replacement. In determining which damages, if any, sought by plaintiff are recoverable under the theory of strict liability in tort, we recognize the following four types of possible injuries in products liability cases involving claims of strict liability: (1) personal injuries, (2) physical damage to property other than the defective product, (3) harm to the defective product itself, and (4) economic loss. *Iowa Electric Light & Power Co. v. Allis-Chalmers Mfg. Co.*, 360 F.Supp. 25, 28 (S.D.Iowa 1973). No personal injury occurred in this case. As explained in the following discussion, we conclude that the damages sought by plaintiff should be categorized as damage to the defective product itself and as physical damage to other property, but not as a claim for economic losses. We also conclude that both types of damages sought by plaintiff are recoverable under the theory of strict liability in tort.

All parties direct our attention to plaintiff's answer to defendant Mack's Interrogatory No. 20 to establish the type of damages sought by plaintiff. This interrogatory asks plaintiff to "[i]temize and describe all damages which you allege were incurred by plaintiff as a result of the incident alleged in plaintiff's petition." Plaintiff's answer, which is attached to the interrogatory as Exhibit B, is an appraisal of damages to a Mack truck. The items listed in the appraisal refer to the truck cab and mixer and to the Mack chassis. Since this is an insurance subrogation claim, plaintiff does not include in its damages the cost to repair the defective frame, but seeks recovery only for injuries to "other property." Plaintiff includes within its definition of "other property" damage to the cab of the truck and to the mounted mixer assembly.

In *Brooks v. Dietz*, 218 Kan. 698, 702, 545 P.2d 1104 (1976), the Kansas Supreme Court approved an action premised upon strict liability in tort and adopted the theory as set out in § 402A of the Restatement of Torts, Second. Section 402A, which imposes liability for physical harm to property, provides as follows:

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, *or to his property*, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller. (Emphasis added.)

The Kansas Supreme Court has permitted recovery under the theory of strict liability in tort for physical damage to property other than the defective product when no personal injury occurred. *Kennedy v. City of Sawyer*, 228 Kan. 439, 445–46, 618 P.2d 788 (1980). The original plaintiffs in *Kennedy*, who were bystanders or third parties, sought recovery for injury to their cattle that were poisoned by the city's use of a herbicide. Concerning the imposition of liability for injury to property of bystanders or third parties, the court held that "[u]nder the doctrine of strict liability the liability of a manufacturer and those in the chain of distribution extends to those individuals to whom injury from a defective product may reasonably be foreseen" when the product

"is being used for the purpose for which it was intended or for which it is reasonably foreseeable it may be used." 228 Kan. at 446, 618 P.2d 788. We, therefore, hold that plaintiff may seek to recover under § 402A for physical damage to property other than the defective product.

Plaintiff's answers to defendant Mack's interrogatories, numbers 6 through 9, show that the truck mixer assembly was purchased separate from the Mack chassis. The record shows that the defendants were not involved in either selecting or installing the mixer. In some cases installing or affixing a good onto a defective product might cause the good to become so much a part of the defective product that it loses its identity and cannot be considered other property under strict liability in tort. In this case, however, where the mixer was removable without injury to the truck, *cf. Johnson v. Interstate Securities Co.*, 152 Kan. 346, 103 P.2d 795 (1940) (doctrine of accession not applicable where grainbed removable without injury to truck), we find that the mixer must be considered as other property. Therefore, damage to the truck mixer assembly installed on the chassis would be recoverable under the theory of strict liability as damage to other property.

Although plaintiff does not include in its damages the cost to repair the broken frame, plaintiff does seek to recover for damages to the cab of the truck arguing that these are recoverable as damages to other property. Nothing in the record, however, suggests that the cab was purchased separate from the chassis of the truck. At oral argument counsel agreed that the truck purchased by plaintiff included the cab as well as the chassis. We reject plaintiff's attempt to classify the cab as other property. Therefore, we must determine whether plaintiff can recover for damage to the cab as physical damage to the defective product.

In considering defendants' argument that damages to the cab are economic loss and not recoverable under the theory of strict liability, we must decide whether damage to the defective product should be included within the definition of economic loss. Judge Rogers has recently addressed the question of whether a business can recover purely economic losses in transactions between business entities under theories of negligence and of strict liability. In *Woodard v. Republic Powdered Metals, Inc.*, No. 74-127-C5 (D.Kan., Sept. 22, 1977) (*unpublished*), plaintiffs, alleging breach of warranty and negligence in the manufacture of a roofing product, sought damages for injury to plaintiffs' business reputation from use of the defective product and for the cost of repairing the roofs to which the product had been applied. In the following discussion Judge Rogers denied plaintiffs' attempt to recover for economic losses under a negligence claim:

We turn to the nature of the claim. Plaintiff states claims for both negligence in manufacture and breach of warranty. We note most courts have not allowed products liability claimants to recover in tort for negligence against the manufacturer of a defective product when the loss suffered is purely pecuniary or economic in nature:

The reluctance of the courts to permit recovery in negligence against remote manufacturers for economic loss is understandable. It has long been a general principle of tort law that, unlike personal injuries and property damage, "economic interests are not entitled to protection against mere negligence."

Turner, "The Vexing Problem of the Purely Economic Loss in Products Liability," 4 Seton Hall L.Rev. 145, 155 (1972), quoting from Prosser, The Law of Torts § 101 at 665 (4th Ed. 1971).

Negligence has proved to be among the least fruitful avenues for recovery of economic loss. In cases involving no threat of personal or property damage, courts have almost unanimously denied claims for recovery in negligence ...

Note, Economic Loss in Products Liability Jurisprudence, 66 Col.L.Rev. 917, 929 (1966). In order to maintain an action for negligence because of a breach of duty growing out of a contractual rela-

tionship, the breach must have been of a duty imposed by law and not merely the breach of a duty imposed by the contract itself. *Long v. Jim Letts Oldsmobile, Inc.*, 135 Ga.App. 293, 217 S.E.2d 602 (1975).

. . . [I]n the case of the sale of a product, when the only "service" performed is its manufacture, we cannot say a cause of action in tort will lie solely for the buyer's disappointment and consequent economic loss when the product does not fulfill his expectations. "Loss of profits or the expense of [substitute goods] is not the character of harm contemplated by the rule which renders a manufacturer liable in negligence." *Amodeo v. Autocraft Hudson, Inc.*, 195 N.Y.S.2d 711, 712 (Sup.Ct.1959). See also, *Karl's Shoe Stores, Ltd., v. United Shoe Mach. Corp.*, 145 F.Supp. 376 (D.Mass.1956); *TWA v. Curtiss-Wright Corp.*, 1 Misc.2d 477, 148 N.Y.S.2d 284 (Sup.Ct.1955). That portion of the Restatement, Torts 2d, which speaks of manufacturer's liability for negligent production of chattels speaks only to products which are "dangerous." *Id.* § 395.

In determining the law applicable to this case, we are further guided by the recent discussion of the distinction between tort and contract by the Supreme Court of Kansas in *Malone v. University of Kansas Medical Center*, 220 Kan. 371, 374, 552 P.2d 885 (1976):

A breach of contract may be said to be a material failure of performance of a duty arising under or imposed by agreement. A tort, on the other hand, is a violation of a duty imposed by law, a wrong independent of contract. Torts can, of course, be committed by parties to a contract. The question to be determined here is whether the actions or omissions complained of constitute a violation of duties imposed by law, or of duties arising by virtue of the alleged express agreement between the parties.

In the case at bar complaint is made of a defective roofing product which was used in plaintiffs' roofing business, the failure of which caused damage to plaintiffs' business reputation and necessitated repair of those roofs to which it had been applied. The ultimate question is, need this court imply a duty in law, apart from the warranties implied by law in the contract, to use care in formulating the product, and should the court proceed to impose damages for consequential losses sustained due to a breach of such a duty? We see several reasons for denying the vitality of a negligence action in such a situation. First, if a negligence cause of action could stand for such damages, no unreasonably dangerous conduct would be deterred thereby. Second, it would interfere with the manufacturer's freedom to contractually limit such consequential damages, see K.S.A. 84–2–719, unless such limitation is unconscionable, and would severely confuse the already knotty problem of insurability in the products liability area. "Claims based on loss of profits, loss of good will, loss of business reputation, etc. are too elusive and illusory to be the proper subject of insurance, at least if not associated with property damage to tangible property." Andersen, Current Problems in Products Liability Law, 31 Ins. Counsel J. 436, 446 (1964). While the above statement is dated by the availability of such recovery under K.S.A. 84–2–715, if disclaimer of such recovery were not allowed in nonconsumer transactions the result could be an open-ended liability for the manufacturer of a defective product who deals at arms-length with another large business enterprise. Third, the risk of consequential economic loss is closely related to the plaintiff's business and can be "passed on" more easily than can the risk of personal injury where a damaged plaintiff's health, and therefore his basic earning capacity, is impaired. See *Price v. Gatlin*, 241 Or. 315, 405 P.2d 502, 504 (1965) (Holman, J. concurring). Finally, Kansas does not permit concepts of privity or disclaimers of warranties to operate against the plaintiff in a "consumer transaction" where unequal bargaining power may be present. K.S.A. 50–639.

In summary, many factors militate against allowing a negligence action to recover consequential economic losses in products liability suits, not the least of which is the availability of a satisfactory remedy under the Uniform Commercial Code. We are not dealing with a situation where the applicable statute of limitations is critical or where the nature of the injury allows invocation of strict liability principles. We conclude that plaintiffs' claim sounds in contract rather than tort insofar as that distinction is material to the issues presented by defendant's motion.

In *Midwest Tank Company, Inc. v. Mobil Chemical Co.*, No. 79–1007 (D.Kan., Oct. 19, 1981) (unpublished), plaintiff sought to amend its complaint to add a claim of strict liability in tort against the manufacturer of epoxy paint used to coat the surface of potable water tanks. Plaintiff sought damages for lost profits incurred in fulfilling its guarantee that the paint jobs would last ten years. Relying upon the discussion quoted above from *Woodard*, Judge Rogers denied amendment of the complaint, noting the damages sought were purely economic losses and not for damages to plaintiff's property or for personal injury.

In Judge Rogers' discussions the term "purely economic losses" included loss of use of the defective product, cost of replacing the product, loss of profits to plaintiff's business, or damage to plaintiff's business reputation from use of the product. In the instant case plaintiff has strenuously argued that it does not seek reimbursement of these expenses and we note that they would not be recoverable under the analysis used by Judge Rogers. Defendant argues that recovery for damage to the defective product itself is also purely economic loss. We conclude, however, that physical injury to a defective product is a type of damage separate from economic losses. The question of whether a plaintiff can recover for damage to a defective product, which was not presented in the cases before Judge Rogers, must now be addressed.

The Kansas appellate courts have not discussed whether recovery for damage to a defective product should be permitted under the theory of strict liability. Defendants assert that the majority of courts considering this issue have not permitted recovery for damage to defective products when a remedy is available under the UCC. In our examination of the cases we have found that courts have used several alternatives in dealing with this difficult question. Although we treat physical damage to the defective product as a separate category of damages, many of the courts included it within physical damage to other property or within a broad definition of economic losses.

In one of the most frequently discussed cases in this area, *Seely v. White Motors Co.*, 63 Cal.2d 9, 45 Cal.Rptr. 17, 403 P.2d 145, 149–50 (1965), the California Supreme Court held that commercial losses, including loss of profits and a refund of the amount paid for the purchase of the defective product, are recoverable under the warranty theories of the Uniform Commercial Code and are not appropriate under the theory of strict liability in tort. The court's definition of commercial losses is equivalent to our definition of pure economic losses discussed earlier in this order. Although plaintiff also sought to recover the cost to repair the defective product under the theory of strict liability in tort, the court held plaintiff had not shown that the defect caused damage to the defective product. The court noted, however, that "[p]hysical injury to property is so akin to personal injury that there is no reason for distinguishing them." 45 Cal.Rptr. at 24, 403 P.2d at 152. Thus, if plaintiff in *Seely* had established that the defect in the product caused physical damage to the product, then the plaintiff could have recovered for that physical damage under the theory of strict liability in tort. *Accord, Arrow Transportation Co. v. Fruehauf Corp.*, 289 F.Supp. 170 (D.Or.1968). We note that the strict liability applied in California is based upon case law, *Greenman v. Yuba Power Products, Inc.*, 59 Cal.2d 57, 377 P.2d 897, 27 Cal.Rptr. 697 (1962), and not § 402A.

In another frequently discussed case, *Santor v. A. & M. Karagheusian, Inc.*, 44 N.J. 52, 207 A.2d 305 (1965), the New Jersey Supreme Court applied the common law theory of strict liability in tort equally to personal injury and to physical damage to other property or to the defective product. In an action against the manufacturer of defective carpets, plaintiff sought as damages the difference between the price paid and the actual market value of carpet that developed unattractive lines after it had been installed. Nothing indicates that the defect was unreasonably dangerous as required for strict liability under § 402A. Although the Uniform Sale of Goods Act had been enacted in New Jersey, apparently the Uniform Commercial Code had not. In Kansas these damages would have been recoverable under the Uniform Commercial Code pursuant to § 2–714, K.S.A. 84–2–714, but probably not under § 402A.

The most difficult issue presented by the question before us is whether the remedies available under the Uniform Commercial Code would be abrogated by allowing recovery for damage to a defective product under § 402A. Some cases unequivocally hold that the availability of remedies under the UCC preclude recovery under strict liability in tort when the damages sought include damage to the defective product and economic losses. *Hawkins Construction Co. v. Matthews Co., Inc.*, 190 Neb. 546, 209 N.W.2d 643, 652 (1973) (applying strict liability when only damages to the defective product "would clearly emasculate the applicable provisions of the Uniform Commercial Code as to warranty and warranty liability which were designed to apply where the product is defective but where no damage results from the defect, either to persons or other property"). *Accord, Clark v. International Harvester Co.*, 99 Idaho 326, 581 P.2d 784 (1978) (Uniform Commercial Code adequately defines the rights of parties when purely economic loss, which includes lost profits and the cost to repair and replace the defective parts of the tractor); *Iowa Electric Light & Power Co. v. Allis-Chalmers Mfg. Co.*, 360 F.Supp. 25 (S.D. Iowa 1973), (contract clearly intended plain-

tiff to bear cost to repair the transformer purchased on special order).

Attempting to resolve the conflict between strict liability and the Uniform Commercial Code, the Alaska Supreme Court distinguishes between a product that is defectively manufactured and deprives a purchaser of the value of his bargain, *i.e.* a "lemon," *Morrow v. New Moon Homes*, 548 P.2d 279 (Alaska 1976), and an unsafe product that causes "sudden and calamitous" damage, *Cloud v. Kit Mfg. Co.*, 563 P.2d 248 (Alaska 1979). Noting the problems in distinguishing between economic loss and direct property damage, the court stated:

We recognize that the line between economic loss and direct property damage is not always easy to discern, particularly when the plaintiff is seeking compensation for loss of the product itself. We cannot lay down an all inclusive rule to distinguish between the two categories; however, we note that sudden and calamitous damage will almost always result in direct property damage and that deterioration, internal breakage and depreciation will be considered economic loss. In their attempts to distinguish between direct property damage and economic loss, the courts should be guided by the existence of, and underlying purposes for, the Uniform Commercial Code warranty actions.

563 P.2d at 251 (footnote omitted).

The theory of strict liability adopted in Alaska was based upon the California case *Greenman v. Yuba Power Products, Inc.*, 59 Cal.2d 57, 377 P.2d 897, 27 Cal.Rptr. 697 (1962), and not § 402A of the Restatement of Torts. In *Cloud* the Alaska Supreme Court limited the scope of common law strict liability to direct property damage that arises from a sudden and calamitous occurrence. To recover under § 402A plaintiff must show that the product in question was sold in a defective condition "unreasonably dangerous to the user or consumer or to his property." Although an overlap exists, the burden § 402A places on plaintiff helps to distinguish defective products with qualitative defects covered by the

Uniform Commercial Code from those products in a defective condition covered by § 402A.

Our conclusion agrees with the decision of the Third Circuit in *Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co.*, 652 F.2d 1165 (3d Cir. 1981), which examines the overlap that occurs in products liability cases involving the tort theory of strict liability under § 402A and the contract theory of warranties embodied in §§ 2–314 and 2–315 of the Uniform Commercial Code. In a scholarly opinion by Judge Adams, the court considered whether the Pennsylvania Supreme Court would classify damage to a product that was allegedly caused by an unreasonably hazardous design defect as "economic loss" or as physical property damage. To make its prediction the court examines policies underlying the applicable legal doctrines, trends indicated by these policies, and decisions of other courts that have faced these questions. The court summarizes some of its conclusions as follows:

> Several principles and trends may be distilled from this analysis of policy and the decisions of other courts. Although strict liability in tort developed out of the law of warranties, the courts of most states have recognized that the principles of warranty law remain the appropriate vehicle to redress a purchaser's disappointed expectations when a defect renders a product inferior or unable adequately to perform its intended function. These courts have classified the damages consequent to qualitative defects, such as reduced value, return of purchase price, repair and replacement, or lost profits, as economic loss, and have relegated those who suffer such commercial loss to the remedies of contract law.
>
> On the other hand, almost all courts have adopted the view that the benefit-of-the bargain approach of warranty law is illsuited to correct problems of hazardous products that cause physical injury. Manufacturers are better able to bear the risk or to take action to correct flaws that pose a danger. Accordingly, tort law imposes a duty on manufacturers to produce

safe items, regardless of whether the ultimate impact of the hazard is on people, other property, or the product itself.

> In cases such as the present one where only the defective product is damaged, the majority approach is to identify whether a particular injury amounts to economic loss or physical damage. In drawing this distinction, the items for which damages are sought, such as repair costs, are not determinative. Rather, the line between tort and contract must be drawn by analyzing interrelated factors such as the nature of the defect, the type of risk, and the manner in which the injury arose. These factors bear directly on whether the safety-insurance policy of tort law or the expectation-bargain protection policy of warranty law is most applicable to a particular claim.

652 F.2d at 1172–73 (Footnote omitted). Based upon the facts before it the court predicts that even when the only injury is to a defective product, "claims for damage caused by hazardous conditions may be brought under tort law, regardless of whether the plaintiff is an ordinary consumer or a commercial consumer." Permitting tort recovery in this situation does not nullify or supersede UCC warranties "because the Code and § 402A protect entirely distinct interests against different kinds of conduct." 652 F.2d at 1175 (footnotes omitted).

Two cases discussed by defendants do not permit recovery for the cost of repairing a defective product, but suggest that such damages are recoverable if the defective product caused *any* physical injury to other property. *Mid Continent Aircraft Corp. v. Curry County Spraying Service, Inc.*, 572 S.W.2d 308 (Tex.1978) (In commercial transactions damage to product itself is essentially a loss of benefit of bargain with purchaser incurring only loss of use and cost to repair the product which are economic losses covered by the UCC). In *Alfred N. Koplin & Co. v. Chrysler Corp.*, 49 Ill. App.3d 194, 7 Ill.Dec. 113, 364 N.E.2d 100 (1977), the court held that recovery in products liability cases under theories of negli-

gence and strict liability was not permitted against the manufacturer for solely economic losses unless use of the product causes property damage or personal injury. The damages sought in *Koplin*, which included the cost to repair two defective air conditioning units and economic losses, were distinguished from those of *Admiral Oasis Hotel Corp. v. Home Gas Industries, Inc.*, 68 Ill.App.2d 297, 216 N.E.2d 282 (1965), in which plaintiffs were permitted to recover the cost to replace defective air conditioning units and damages arising from loss of business when the defect in the units also resulted in damage to walls, carpeting, and furniture. Although the facts before us would permit such a distinction, we believe the Kansas Supreme Court would decline to follow the path of the Illinois and Texas courts in attempting to draw a fine line between cases involving only damage to the defective product and those also involving damage to other property.

The Kansas cases dealing with strict liability in tort have consistently interpreted § 402A broadly, permitting expansive recovery under this theory. For example, bystanders or third parties were permitted to recover for foreseeable injury to property in *Kennedy v. City of Sawyer*, 228 Kan. 439, 445–46, 618 P.2d 788 (1980). The court noted that imposing liability for this injury under strict liability "is based on a desire to achieve maximum protection for the injured party and to promote the public interest in discouraging the marketing of products having defects that are a menace to the public." Id. (Citation omitted.) We doubt that the Kansas appellate courts would engage in drawing lines between different types of property damage as attempted by many courts in the cases discussed above. We believe that the Kansas Supreme Court, if faced with the question before us, would once again follow the explicit language of § 402A and allow plaintiff to recover for physical damage to property resulting from an unreasonably dangerous defective product regardless of whether the damage is inflicted upon the defective product or upon other property.

Under this analysis we hold that plaintiff can recover for damage to the cab of the Mack truck if plaintiff is able to establish the elements of strict liability in tort as set forth in § 402A of the Restatement of Torts, Second.

Plaintiff has filed a motion to amend pursuant to Rule 15 of the Federal Rules of Civil Procedure to add claims against each defendant that it "negligently designed, manufactured, tested, inspected, distributed, and sold said truck to plaintiff" and that this negligence "was the direct and proximate cause of plaintiff's damages." At oral argument plaintiff stated that this amendment was sought as an alternative claim and would not be pursued if its claim under strict liability in tort was not dismissed. Therefore, plaintiff's motion to amend will be denied.

IT IS THEREFORE ORDERED that defendants' motions for summary judgment on the ground that plaintiff's warranty claim is barred by the statute of limitations be and hereby is sustained. IT IS FURTHER ORDERED that defendants' motions for summary judgment on the ground that plaintiff has failed to state a valid claim under strict liability be and hereby is overruled. IT IS FURTHER ORDERED that plaintiff's motion to amend pursuant to Rule 15 of the Federal Rules of Civil Procedure be and hereby is overruled.