Dennis **WINCHESTER** and John Winchester, Plaintiffs–Appellants,

v.

**LESTER'S OF MINNESOTA, INC.,** Defendant–Appellee.

No. 91–3361.

United States Court of Appeals, Tenth Circuit.

Jan. 12, 1993.

N. Jack Brown of Boddington & Brown, Kansas City, KS, for plaintiffs-appellants.

Stephen Dennis (W. Terry Fitzgerald and Melodie A. Powell, also of Niewald, Waldeck & Brown, Overland Park, KS, on the brief), for defendant-appellee.

Before LOGAN, LAY[*] and BARRETT, Circuit Judges.

LOGAN, Circuit Judge.

Plaintiffs John and Dennis Winchester, Kansas hog farmers, appeal the judgment of the district court following its grant of summary judgment in favor of defendant Lester's of Minnesota, Inc. on the issues before us for review. Plaintiffs' amended complaint sought recovery of damages against defendant for negligence and breach of express and implied warranties in connection with a faulty ventilation system in a hog house built by defendant on plaintiffs' farm. The district court found all claims barred by a two-year tort statute of limitations, except the claim for express warranty. It found the contract itself limited plaintiffs' damages for breach of express warranty to the cost of correcting the ventilation problem.

On appeal the issues are whether the court properly ruled that plaintiffs discovered the cause of their injury more than two years before suit was filed, and, if so, whether defendant's actions estopped it from raising the statute of limitations defense. We must also determine whether plaintiffs' alleged losses—for lost hogs, under-weight animals, extra veterinary bills, extra labor, and expenses to repair the ventilation problem—should be characterized as tort or contract damages, and, if contract, whether the limitation on recoverable damages stated in the contract is enforceable against plaintiffs.

I

The facts are largely undisputed. In 1983, plaintiffs and defendant entered into an agreement that defendant would design, manufacture, and construct a hog house on plaintiffs' farm. Defendant expressly warranted that its ventilation systems were "guaranteed to have ample capacity to supply and distribute fresh air for the 'designed for' animal or poultry population under weather conditions generally accepted as normal for the area." App. at 40. The same contract purported to deny any other express or implied warranties and limited all liability to the price of the product itself or to the cost to "replace materials or perform corrective work agreed to be defective." *Id.* Almost immediately after moving their operations into the new building, plaintiffs experienced problems with their hogs becoming ill and failing to gain weight.

During the first half of 1984, a feed salesman and a veterinarian both suggested to plaintiffs that the problem was probably the result of inadequate ventilation. Plaintiffs then contacted defendant, who

[*] The Honorable Donald P. Lay, Senior United States Circuit Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation.

sent a representative to examine the ventilation system. Finally, in 1986, plaintiffs contacted the manufacturer of the ventilation system and discovered that defendant's installation of the system did not conform to the manufacturer's standards.

Plaintiffs filed suit in April 1987. The initial complaint was dismissed without prejudice in November 1988, and a few days later plaintiffs filed an amended complaint setting out theories of negligence, breach of implied warranty of merchantability, breach of implied warranty of fitness for a particular purpose, and breach of express warranties. The amended complaint relates back to the April 1987 filing date of the original complaint by reason of the savings clause in Kan.Stat.Ann. § 60–518. Defendant sought summary judgment on all claims except that for breach of express warranty on the basis of the bar of the two-year tort statute of limitations, which it argued commenced to run no later than mid-June 1984. The district court agreed and found no estoppel preventing defendant from raising the statute of limitations defense.

Plaintiffs claimed to have suffered damages for extra labor, lost hogs, losses due to the sale of under-weight hogs, extra veterinary bills, lost profits for 1987, and costs expended to correct the ventilating system. The district court characterized the lawsuit as a products liability action, and considered all except the costs for correction of the ventilating system as "claims for, or related to, property damage to plaintiffs' hogs, rather than a loss of the bargain." It read the Kansas cases to require application of a two-year statute of limitations, even though some of the claims were characterized as based on breach of implied or express warranties. App. at 31. Without expressly discussing whether the limitation on warranties contained in the contract was enforceable, the district court limited plaintiffs' recovery to the costs of repair of the ventilating system, as the only damages sought that did not fall under its tort characterization. This appeal followed.

## II

■ A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Our standard of review is de novo. *Hydro Conduit Corp. v. American–First Title & Trust Co.*, 808 F.2d 712, 714 (10th Cir. 1986). Specifically, we review district court determinations of state law de novo, *Salve Regina College v. Russell*, —— U.S. ——, ——, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991), and ascertain how the Kansas Supreme Court would rule on the issue presented. *Adams–Arapahoe School Dist. No. 28–J v. GAF Corp.*, 959 F.2d 868, 870–71 (10th Cir.1992).

■ In view of the problems plaintiffs had experienced, the professional advice they received, and their dealings with defendant, we have no difficulty upholding the district court's determination that plaintiffs knew or should have known that the ventilation system was defective more than two years before April 1987. Nor do we have any problem with the district court's ruling that defendant was not estopped from raising the statute of limitations defense. Nothing in defendant's attempts to help plaintiffs solve the problem warrants the application of estoppel principles to bar the limitations defense.

If we could agree with the district court that plaintiffs' losses were properly characterized as property damage, in the same sense as collision damage in an accident caused by a faulty automobile wheel, then we would also agree that the Kansas Supreme Court would likely apply the two-year tort statute of Kan.Stat.Ann. § 60–513(a)(4) rather than the four-year limitation of the Uniform Commercial Code (UCC), *id.* § 84–2–725, even though plaintiffs attempted to characterize the claims as breaches of express or implied warranties. We acknowledge that in *Voth v. Chrysler Motor Corp.*, 218 Kan. 644, 545 P.2d 371 (1976), a case involving personal

injury, the Kansas Supreme Court accepted the agreement between the parties that the four-year statute of limitations under § 84–2–725 applied. *Id.*, 545 P.2d at 375. However, we agree with the district court that subsequent cases have cast serious doubt on the continued validity of *Voth. See Haysville U.S.D. No. 261 v. GAF Corp.*, 233 Kan. 635, 666 P.2d 192, 200–201 (1983) (when breach of warranty causes death, personal injury, or damage to property comparative negligence statute will apply because it is akin to an action in tort); *Kennedy v. City of Sawyer*, 228 Kan. 439, 618 P.2d 788 (1980) (implied warranty claim in products liability context sounds in tort); *Grey v. Bradford–White Corp.*, 581 F.Supp. 725, 728 (D.Kan.1984).

The problem in the instant case, and here we disagree with the district court, is in the characterization of the losses claimed by plaintiffs as essentially property damage of the type to which tort principles are applied. We note that the Kansas Supreme Court in *Haysville* cited with approval the Kansas Court of Appeals decision in *Broce–O'Dell Concrete Prods. Inc. v. Mel Jarvis Constr. Co.*, 6 Kan.App.2d 757, 634 P.2d 1142 (1981). *Broce–O'Dell* concerned claims for breach of implied and express warranties in connection with the construction of a concrete grain storage cylinder. Jarvis subcontracted the cement work to Broce–O'Dell. When the initial layers of concrete did not set properly, Jarvis decided to continue pouring and consider repairs later. Ultimately, the entire cylinder had to be torn down and rebuilt. Broce–O'Dell sued Jarvis over an unpaid bill and Jarvis counter-claimed for the cost of tearing down the defective cylinder and rebuilding it. Broce–O'Dell sought a jury instruction on comparative negligence, on the theory that if Jarvis were more than fifty percent negligent in deciding to continue pouring on top of the initial layers there could be no recovery. The Kansas Court of Appeals declined to extend the holding of *Kennedy* by applying comparative negligence to a breach of contract action. In distinguishing between products liability and contracts cases, the court said:

> There is no claim of injury to person or property from a dangerous product, but only of economic loss through the furnishing of a defective product. Unless a breach of warranty, either express or implied, causes death, personal injury or physical damage to property, the comparative negligence statute does not apply. If the result is simple economic loss, liability and damages are governed by breach of contract principles.

634 P.2d at 1145.

Under this formulation, determining the proper statute of limitations for plaintiffs' breach of warranty claims turns on whether they have alleged physical damage to property from a dangerous product or simple economic loss from a defective one. Both the Kansas courts and our own precedent provide some guidance in making this distinction. In *Elite Professionals, Inc. v. Carrier Corp.*, 16 Kan.App.2d 625, 827 P.2d 1195, 1202 (1992), the Kansas Court of Appeals adopted the language of a Kansas federal district court decision defining economic loss as including "loss of use of the defective product, cost of replacing the product, loss of profits to plaintiff's business, or damage to plaintiff's business reputation from use of the product...." *See Fordyce Concrete, Inc. v. Mack Trucks, Inc.*, 535 F.Supp. 118, 123 (D.Kan.1982); *see also Professional Lens Plan, Inc. v. Polaris Leasing Corp.*, 234 Kan. 742, 675 P.2d 887, 897 (1984). This court, interpreting Kansas law, has held that "an action for damages from a product's qualitative defects alone without proof of the product's dangerousness cannot sound in tort." *Daitom, Inc. v. Pennwalt Corp.*, 741 F.2d 1569, 1581 (10th Cir.1984).

In *Daitom* we went further, characterizing a strict physical damages/economic loss construct as unworkable, stating:

> [T]he line between tort and contract must be drawn by analyzing interrelated factors such as the nature of the defect, the type of risk, and the manner in which the injury arose. These factors bear directly on whether the safety-insurance policy of tort law or the expectation-bargain protection policy of warranty

law is most applicable to a particular claim.

741 F.2d at 1582 (quoting *Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co.*, 652 F.2d 1165, 1173 (3d Cir.1981)). Consideration of the nature of the defect, the type of risk, and the manner of injury in this case would lead to the conclusion that the expectation-bargain protection policy of warranty law is more applicable to the loss before us than the safety-insurance policy of the tort law. *See East River Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 871, 106 S.Ct. 2295, 2302, 90 L.Ed.2d 865 (1986) (injury to the defective product itself is an economic loss not recoverable in tort).

Applying these considerations to the facts at hand, we hold that plaintiffs' warranty claims sound in contract rather than tort. Plaintiffs contracted with defendant for a hog house suitable for their hog farming operation. Defendant warranted that the facility would provide adequate ventilation for the "designed for" animal population, and plaintiffs relied upon defendant's expertise in designing such a facility. However, faulty installation of the ventilation system caused plaintiffs' hogs to become sick and fail to gain weight. Although plaintiffs' loss of hogs due to poor ventilation is property damage of a sort, the essence of their claim is the loss of the benefit of a properly ventilated hog house, plus consequential damages. In their complaint, plaintiffs seek recovery for expenses related to "veterinarian bills, loss of hogs, loss of time and loss of profits in their hog operation." App. at 76–77. The economic losses occasioned by a qualitative defect "that precludes the product from being fit for its intended use or functioning as expected for the purpose it was designed," *Daitom*, 741 F.2d at 1581, are not recoverable in tort. Because their claims are contractual in nature, the plaintiffs are entitled to the four-year statute of limitations under the UCC.

### III

■ Defendant also contends that the plaintiffs' damages are limited under the contract language to the costs of repairing the ventilation system in the hog house. The contract purports to negate the existence of any warranties other than those expressed and provides that "[l]oss under this warranty is limited to the price of the product subject to the claim. In no case shall LESTER'S be liable for consequential, special or indirect damages resulting from the use or handling of its product." App. at 40. Although the UCC permits contractual limitation of consequential damages when there is no injury to the person, Kan. Stat.Ann. § 84–2–719(3), the Kansas Consumer Protection Act (KCPA) prohibits suppliers in consumer transactions from "[e]xclud[ing], modify[ing] or otherwise attempt[ing] to limit the implied warranties of merchantability and fitness for a particular purpose." *Id.* § 50–639(a)(1). It further provides that "[a] disclaimer or limitation in violation of this section is void." *Id.* § 50–639(e).

Both parties to this contract clearly fall within the meaning of these provisions. The KCPA defines "consumer" as including "an individual who seeks or acquires property or services for ... agricultural purposes." *Id.* § 50–624(b). Agricultural purposes relate to "the production, harvest, exhibition, marketing, transportation, processing or manufacture of agricultural products ... [which] include[ ] ... livestock." *Id.* § 50–624(a). A supplier is "a manufacturer, distributor, dealer, seller, lessor, assignor, or other person who, in the ordinary course of business, solicits, engages in or enforces consumer transactions." *Id.* § 50–624(i). Finally, a consumer transaction is "a sale, lease, assignment or other disposition for value of property or services within this state ... to a consumer." *Id.* § 50–624(c). The transaction between plaintiffs and defendant is a consumer transaction within the meaning of the KCPA; therefore, the contractual exclusion of the implied warranties of merchantability and fitness for a particular purpose is void under Kansas law.

· The district court's grant of summary judgment is REVERSED in part, with directions to reinstate plaintiffs' claims for

implied warranty and to remove the limitation it imposed on damages. The case is REMANDED for further proceedings consistent with this opinion.