**CHAMPLAIN ENTERPRISES, INC.,**
**d/b/a CommutAir, Plaintiff,**

v.

**UNITED STATES of America and Beech**
**Aircraft Company, Defendants.**

**No. 94–CV–1356.**

United States District Court,
N.D. New York.

Nov. 20, 1996.

See also, 1996 WL 650700.

Kroll & Tract, New York City (William C. Brown, of counsel), for Plaintiff.

Roemer, Wallens & Mineaux, LLP, Albany, NY (Matthew J. Kelly, of counsel), for Defendant Beech Aircraft Corp.

## MEMORANDUM–DECISION & ORDER

McAVOY, Chief Judge.

### I. BACKGROUND

This case arises from the crash of Commut-Air Flight 4821. On January 3, 1992, the aircraft was on approach to Adirondack Airport in Saranac Lake, New York. It struck a mountain approximately 4.3 miles short of the runway and was destroyed. Two persons died and two persons survived the crash. In a related case, *Momen, et al. v. U.S., et al.* (94–CV–654), one of the survivors of the crash brought suit in this Court alleging negligence on the part of USAir, Champlain Enterprises (the plaintiff here), Beech Aircraft, and the United States.

Plaintiff, a New York corporation, is the owner/operator of the aircraft that crashed. Named as defendants in this action are the United States and Beech Aircraft—the manufacturer of the plane. Beech Aircraft Corp. ("Beech") is a Kansas corporation with its principle place of business in Wichita, Kansas. By Order dated October 15, 1996, this Court granted co-defendant United States' Motion for Summary Judgment and dismissed all claims against the United States in this action.

Currently pending before this Court is defendant Beech Aircraft's Motion to Dismiss for failure to state a claim and Plaintiff's Cross–Motion to Amend its Complaint, for a second time, to state additional causes of action against Beech Aircraft.

Plaintiff's Second and Third Causes of Action state claims against Beech. Plaintiff's Second Cause of Action asserts negligence in the design and manufacture of the aircraft's Instrument Landing System ("ILS") components as well as failure to instruct and warn concerning these deficiencies. Plaintiff's Third Cause of Action sounds in strict liability, in that Beech is alleged to have sold a product that was unreasonably dangerous. Plaintiff's proposed Second Amended Complaint seeks to add two additional causes of action for breach of express and implied warranties.

### II. DISCUSSION

Defendant seeks dismissal of all claims contained in the Second and Third Causes of Action for failure to state claims upon which relief can be granted. In addition, Defendant opposes Plaintiff's motion to amend the Complaint on the grounds that Plaintiff's delay is prejudicial. The crux of Beech's dismissal argument is that a plaintiff cannot recover from the manufacturer of a product, for the loss of the product *itself,* based on theories of strict products liability or negligence.

#### A. Motion To Dismiss

Federal Rule of Civil Procedure 12(b)(6) provides that a cause of action shall be dismissed if the complaint fails "to state a claim upon which relief can be granted." In ana-

lyzing a motion to dismiss, the facts alleged by the plaintiff are assumed to be true and must be liberally construed in the light most favorable to the plaintiff. *See, e.g., Easton v. Sundram,* 947 F.2d 1011, 1014–15 (2d Cir. 1991), *cert. denied,* 504 U.S. 911, 112 S.Ct. 1943, 118 L.Ed.2d 548 (1992). While the court need not accept mere conclusions of law, the court should accept the pleader's description of what happened along with any conclusions that can reasonably be drawn therefrom. *See Murray v. City of Milford,* 380 F.2d 468 (2d Cir.1967).

Furthermore, when a party makes a Rule 12(b)(6) motion to dismiss, the court will limit its consideration to the facts asserted on the face of the complaint. *Cosmas v. Hassett,* 886 F.2d 8, 13 (2d Cir.1989). A complaint will not be dismissed for failure to state a claim unless it appears, beyond a doubt, that the plaintiff can prove no set of facts that would entitle them to relief. *See Wanamaker v. Columbian Rope Co.,* 740 F.Supp. 127 (N.D.N.Y.1990).

With this standard in mind, the Court will address the sufficiency of Plaintiff's Second and Third Causes of Action.

### B. Plaintiff's Second and Third Causes of Action

Plaintiff's Second and Third Causes of Action state claims against Beech for negligence and strict products liability. As an initial matter, the Court must determine what law to apply in a situation where an aircraft manufactured and sold in Kansas, by Kansas corporations, is operated by a New York corporation and crashes in New York State.

#### i. Choice of Law Analysis

In a diversity action, a federal court must apply the substantive law of the state in which it sits. *See Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Because choice of law rules are substantive, we must apply the law that a New York State court would apply. *Klaxon Co. v. Stentor Elec. Manuf. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941).

Here, Plaintiff argues that Kansas law should apply because of the choice-of-law provision in the aircraft sale agreement between Champlain and Beech Acceptance Corporation (not a defendant here). Although New York law gives full effect to parties' choice-of-law provisions, *see Woodling v. Garrett Corp.,* 813 F.2d 543, 551 (2d Cir. 1987), the language in the sale agreement here is not dispositive. Under New York law, a choice-of-law provision indicating that a contract will be governed by a certain body of law does not dictate the law that will govern non-contract based claims. *See Krock v. Lipsay,* 97 F.3d 640, 644 (2d Cir. 1996); *Klock v. Lehman Bros. Kuhn Loeb Inc.,* 584 F.Supp. 210, 215 (S.D.N.Y.1984) ("[I]t has been held in New York that a contractual choice of law provision governs only a cause of action sounding in contract.") (citing *Knieriemen v. Bache Halsey Stuart Shields, Inc.,* 74 A.D.2d 290, 427 N.Y.S.2d 10, 12–13 (1st Dep't), *lv. denied,* 50 N.Y.2d 1021, 431 N.Y.S.2d 812, 410 N.E.2d 745 (1980)).

Under New York law, "in order for a choice-of-law provision to apply to claims for tort arising incident to the contract, the express language of the provision must be 'sufficiently broad' as to encompass the entire relationship between the contracting parties." *Krock,* 97 F.3d at 645 (citing *Turtur v. Rothschild Registry Int'l, Inc.,* 26 F.3d 304, 309–10 (2d Cir.1994)). Here, the choice-of-law clause in the parties' agreement states only that "[t]his Agreement shall be governed by the laws of the State of Kansas." (Brown Aff. Exh. A, at 9.) This language can not be read broadly enough to apply to negligence and products liability claims. *Accord, Krock,* 97 F.3d at 644 (holding that a similarly worded contractual provision does not cover fraudulent misrepresentation claims). Consequently, the Court must look to New York law to determine the body of law properly applicable to the present controversy.

In New York, the traditional choice of law rule for torts has been *lex loci delicti,* which mandates that a court apply the law of the state where the tort occurred. *See Hadar v. Concordia Yacht Builders,* 886 F.Supp. 1082, 1093 (S.D.N.Y.1995) (citing

*Schultz v. Boy Scouts of Am., Inc.*, 65 N.Y.2d 189, 491 N.Y.S.2d 90, 94, 480 N.E.2d 679, 682 (1985)). Nevertheless, under New York's more "recent" choice-of-law methodology, "New York has adopted an 'interest analysis,' which requires that [ ] 'the law of the jurisdiction having the greatest interest in the litigation ... be applied.'" *Kalb, Voorhis & Co. v. American Fin. Corp.*, 8 F.3d 130, 132 (2d Cir.1993) (*quoting Intercontinental Planning, Ltd. v. Daystrom, Inc.*, 24 N.Y.2d 372, 300 N.Y.S.2d 817, 823, 248 N.E.2d 576, 582 (1969)).

■ Initially, two separate inquiries are required to determine the greater interest: "(1) what are the significant contacts and in which jurisdiction are they located; and, (2) whether the purpose of the law is to regulate conduct or allocate loss." *Padula v. Lilarn Properties Corp.*, 84 N.Y.2d 519, 620 N.Y.S.2d 310, 311, 644 N.E.2d 1001, 1002 (1994) (*citing Schultz*, 491 N.Y.S.2d at 95–96, 480 N.E.2d at 684–85).

■ Applying the second prong of New York's interest test first, it is clear that the purpose of negligence and product liability laws is to both regulate conduct and allocate loss. It is equally clear that both New York and Kansas have similar interests in regulating conduct and air safety. What is not clear, however, is how each state proposes to regulate that conduct through loss allocation. For example, Plaintiff concedes that if New York products liability and negligence law applies, it has "a significant hurdle to overcome" to recover economic losses associated with the destruction of the aircraft. (Plt's Mem. of Law in Support of Cross–Motion to Amend at 5) (*citing Bocre Leasing Corp. v. General Motors Corp.*, 84 N.Y.2d 685, 621 N.Y.S.2d 497, 645 N.E.2d 1195 (1995) (denying recovery for purely economic losses based on strict liability and negligence)). Concomitantly, Plaintiff argues that Kansas law allows recovery for economic damages in this instance.[1]

The Court notes that any approach that relies on a bright line between laws that regulate conduct and those that allocate loss is in many ways intuitively unsound. In essence, all laws regulate conduct to some degree. Even "purely" loss allocative laws affect conduct indirectly by acting as punishment and/or incentive. To classify a law as one or the other is in large degree an arbitrary determination. For example, the products liability and negligence standards at issue here regulate conduct, but the potential limitation on damages serves a loss allocation function. Simply labeling the law in question as loss-allocative or conduct-regulating does not end the inquiry.

■ Ultimately, under New York choice-of-law rules, the decision as to what law is to be applied turns on which state has the greatest interest in its law's application. *See Miller v. Miller*, 22 N.Y.2d 12, 290 N.Y.S.2d 734, 737, 237 N.E.2d 877, 880 (1968) ("Contacts obtain significance only to the extent that they relate to the policies and purposes sought to be vindicated by the conflicting laws.") (*quoting In re Crichton*, 20 N.Y.2d 124, 281 N.Y.S.2d 811, 818 n. 8, 228 N.E.2d 799, 806 n. 8 (1967)). As a proxy for the determination of greatest state interest, the "regulates-conduct/allocates-loss dichotomy" has value, but as a classification in and of itself, it provides a court scant guidance.

■ Accordingly, with this limitation in mind the Court will apply the remaining prong of New York's interest test in an effort to understand the policies and purposes sought to be vindicated by the potentially conflicting laws. *See Miller*, 290 N.Y.S.2d at 737, 237 N.E.2d at 880. Under the first prong of New York's interest test, "the significant contacts are, almost exclusively, the parties' domiciles and the locus of the tort." *Schultz*, 491 N.Y.S.2d at 95, 480 N.E.2d at 684; *see also AroChem Int'l, Inc. v. Buirkle*, 968 F.2d 266, 270 (2d Cir.1992). As the Second Circuit recently noted:

> The respective importance of each of those contacts is determined by the nature of the law in question. Where the parties are domiciled in different states, the locus of the tort will almost always be determina-

---

1. The precise contours of Kansas tort law are not critical at this point in the analysis; rather, the Court simply notes that a conflict may exist.

Therefore, a further examination under New York's choice-of-law test is appropriate.

tive in cases involving conduct-regulating laws, *see Padula,* 620 N.Y.S.2d at 311, 644 N.E.2d at 1002, *Schultz,* 491 N.Y.S.2d at 95–96, 480 N.E.2d at 684–85, whereas those cases concerning loss allocation will turn in significant part on the domiciles of the parties, *see AroChem,* 968 F.2d at 270, *Schultz,* 491 N.Y.S.2d at 96, 480 N.E.2d at 685.

*Krock,* 97 F.3d at 646.

When examining which jurisdiction has the more significant contacts, many courts have stated that "the law of the place of the tort will normally apply, unless displacing it 'will advance' the relevant substantive law purposes without impairing the smooth working of the multi-state system or produce great uncertainty for litigants." *Morgan Guar. Trust Co. of N.Y. v. Garrett Corp.,* 625 F.Supp. 752, 759 (S.D.N.Y.1986) (*citing Neumeier v. Kuehner,* 31 N.Y.2d 121, 335 N.Y.S.2d 64, 70, 286 N.E.2d 454, 458 (1972)); *see also Hadar,* 886 F.Supp. at 1093 ("*lex loci delicti* remains the general rule in tort cases") (*citing Cousins v. Instrument Flyers, Inc.,* 44 N.Y.2d 698, 405 N.Y.S.2d 441, 441, 376 N.E.2d 914, 915 (1978)).

■ Here, New York's contacts are tenuous. First, in products liability cases involving mobile products, such as airplanes or automobile tires, courts applying New York choice-of-law rules often consider the mobility of the product. *See Hadar,* 886 F.Supp. at 1093–94; *Campbell v. Goodyear Tire & Rubber Co.,* 1985 WL 1514, at *1 (S.D.N.Y. 1985). Moreover, "in a disaster befalling a plane aloft, the place of the crash is often random ... and the sovereignty in which the accident occurs has little interest in applying its substantive law to the case." *Pescatore v. Pan Amer. World Airways,* 97 F.3d 1, 13 (2d Cir.1996) (*citing Babcock v. Jackson,* 12 N.Y.2d 473, 240 N.Y.S.2d 743, 750, 191 N.E.2d 279, 284 (1963) (place of accident has little interest where it was a "purely adventitious circumstance that the accident occurred there")); *see also Foster v. United States,* 768 F.2d 1278, 1282 (11th Cir.1985) (disfavoring law of place where air disaster occurred); *In re Air Crash Disaster Near Chicago, Ill.,* 644 F.2d 594, 615 (7th Cir.) (in air disasters, "place of injury is largely fortuitous"), *cert.*

*denied,* 454 U.S. 878, 102 S.Ct. 358, 70 L.Ed.2d 187 (1981); *but see O'Rourke v. Eastern Air Lines, Inc.,* 730 F.2d 842, 849 (2d Cir.1984) (stating that "we don't believe that claims arising out of an airplane crash *require* the application of the *Cousins* 'extraordinary circumstances' exception" to the general *lex loci delicti* rule) (emphasis in original).

■ Second, any interest that New York may have in the application of its laws to this case is limited. Although New York has a legitimate and strong interest in promoting safe air travel and in preventing future accidents in its skies, *see Babcock,* 240 N.Y.S.2d at 750, 191 N.E.2d at 284 (place of accident has interest in promoting "air safety"), that interest is not advanced by the assessment of the loss suffered by this plaintiff. *See Pescatore,* 97 F.3d at 13. Under New York's choice of law rules, when conflicting rules concern the "allocation of loss rather than the regulation of conduct, 'the locus jurisdiction has at best a minimal interest in determining the right of recovery or the extent of the remedy.'" *Pescatore,* 97 F.3d at 13 (*quoting Datskow v. Teledyne Continental Motors Aircraft Prods.,* 807 F.Supp. 941, 944 (W.D.N.Y.1992) (*quoting Schultz,* 491 N.Y.S.2d at 96, 480 N.E.2d at 685)); *see also Padula,* 620 N.Y.S.2d at 311–12, 644 N.E.2d at 1002–03 (summarizing "distinction ... between a choice-of-law analysis involving standards of conduct and one involving the allocation of losses").

■ Third, and perhaps most importantly, the "'place of the wrong,' for purposes of New York's *lex loci delicti* rule, 'is considered to be the place where the last event necessary to make the actor liable occurred.'" *Pescatore,* 97 F.3d at 13 (*quoting Schultz,* 491 N.Y.S.2d at 94, 480 N.E.2d at 683). Here, although the crash occurred in New York, the alleged causative misconduct occurred in Kansas, where defendant Beech manufactured the aircraft. Indeed, New York courts have applied the law of the state in which a product was manufactured because that state has a large stake in governing the liability of manufacturers within its borders. *See Hadar,* 886 F.Supp. at 1094;

*Carlenstolpe v. Merck & Co.*, 638 F.Supp. 901, 910 (S.D.N.Y.1986).

Under these circumstances, where no negligence or misconduct is alleged to have occurred in New York, it is reasonable to conclude that Kansas has the greater interest in the application of its laws. *See Pescatore*, 97 F.3d at 13 ("where no negligence or misconduct took place in Scotland, and where no damages were incurred in Scotland, there is really no reason at all why the compensability of the plaintiff's damages should be governed by Scottish law"). For these reasons, the Court will apply Kansas law to determine if Plaintiff has stated a cause of action sufficient to withstand Defendant's Motion to Dismiss.

## C. Kansas Law

■ Under Kansas law, the general rule is that a party may not recover damages for simple economic loss under theories of negligence or strict liability in tort. *See Sunbird Air Servs., Inc. v. Beech Aircraft Corp.*, 1992 WL 167273, at *1 (D.Kan.1992) (*citing Haysville U.S.D. No. 261 v. GAF Corp.*, 233 Kan. 635, 644, 666 P.2d 192 (1983)); *Broce–O'Dell Concrete Prods. v. Mel Jarvis Constr.*, 6 Kan.App.2d 757, 760, 634 P.2d 1142 (1981). In *Elite Professionals, Inc. v. Carrier Corp.*, 16 Kan.App.2d 625, 827 P.2d 1195, 1202 (1992), the Kansas Court of Appeals adopted the language of a Kansas federal district court decision defining "economic loss" as including "loss of use of the defective product, cost of replacing the product, loss of profits to plaintiff's business reputation...." *Winchester v. Lester's of Minnesota, Inc.*, 983 F.2d 992, 995 (10th Cir.1993) (*citing Fordyce Concrete, Inc. v. Mack Trucks, Inc.*, 535 F.Supp. 118, 123 (D.Kan.1982)).

Under certain circumstances, however, Kansas courts have carved out limited exceptions to the general rule that purely economic losses are not recoverable in tort. For example, in *Fordyce Concrete, Inc. v. Mack Trucks, Inc.*, a federal district court sitting in Kansas allowed a claim for damage to the defective product itself where the defective product was "unreasonably dangerous." 535 F.Supp. at 126; *cf. Winchester*, 983 F.2d at 996 (allowing damages tied to breach of warranty claims because "warranty claims sound in contract rather than tort" and thus do not implicate "the safety-insurance policy of tort law"). The *Fordyce* Court stated:

We believe that the Kansas Supreme Court, if faced with the question before us, would once again follow the explicit language of [Restatement (Second) of Torts] § 402A and allow plaintiff to recover for physical damage to property resulting from an unreasonably dangerous defective product regardless of whether the damage is inflicted upon the defective product or upon other property.

535 F.Supp. at 126; *see also Daitom, Inc. v. Pennwalt Corp.*, 741 F.2d 1569, 1581 (10th Cir.1984) ("*Fordyce* ... held that plaintiff could recover for physical damage to property resulting from an unreasonably dangerous defective product, irrespective of whether the damage was inflicted upon the defective product itself or upon other property.")

However, the *Fordyce* exception is limited. As the Tenth Circuit has noted: "[U]nreasonable dangerousness consistently appears to be a prerequisite and touchstone to recovery in tort for damages caused by a defective product." *Daitom*, 741 F.2d at 1581.

■ Consequently, Champlain's Second Cause of Action must be dismissed because under Kansas law this Court cannot grant relief for damage to the aircraft—the defective product itself—based on a negligence theory. *Accord, Fordyce*, 535 F.Supp. at 122 ("We see several reasons for denying the vitality of a negligence action in such a situation."); *Daitom*, 741 F.2d at 1581. However, Champlain's Third Cause of Action, which sounds in strict liability, survives because Plaintiff can recover for damage to the aircraft, under Kansas law, if Plaintiff is able to establish that the aircraft was unreasonably dangerous.

## D. Plaintiff's Cross–Motion to Amend

■ Leave to amend under Federal Rule of Civil Procedure 15 shall be freely granted "when justice so requires." Fed. R.Civ.P. 15(a). Although Rule 15 dictates that "leave to amend is to be freely given when justice so requires, the grant of leave

to amend rests in the sound discretion of the court." *Scottish Air Int'l, Inc. v. British Caledonian Group, PLC.*, 152 F.R.D. 18, 29 (S.D.N.Y.1993). Such leave will be denied when it would be futile, cause undue delay or prejudice, or when it is sought in bad faith. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). In addition, courts have properly denied leave to amend where "the motion is made after an inordinate delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice the defendant." *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir.1990). The party seeking leave has the burden of providing satisfactory reasons justifying amendment. *Cresswell*, 922 F.2d at 72.

▄ Generally, a delay in making a motion to amend is a factor in deciding whether or not to grant the motion; however, delay by itself is not a reason to deny the motion. *See U.S. v. Continental Ill. Nat. Bank and Trust*, 889 F.2d 1248, 1254 (2d Cir.1989). For example, the Second Circuit found that a three year delay is an inadequate basis for denying a motion to amend when there is no showing of bad faith on the part of the plaintiff or prejudice to the defendant. *Middle Atlantic Utils. Co. v. S.M.W. Dev. Corp.*, 392 F.2d 380 (2d Cir.1968).

▄ However, in instances "where . . . 'a considerable amount of time' has passed between filing the complaint and the motion to amend, courts have placed the burden upon the movant to show some 'valid reason for his [or her] neglect and delay.'" *Sanders v. Thrall Car Mfg. Co.*, 582 F.Supp. 945 (S.D.N.Y.1983); *aff'd*, 730 F.2d 910 (2d Cir. 1984) (*citing Hayes v. New England Millwork Distribs., Inc.*, 602 F.2d 15, 19–20 (1st Cir.1979) (*quoting Freeman v. Continental Gin Co.*, 381 F.2d 459, 469 (5th Cir.1967))); *see also Greenberg v. Mynczywor*, 667 F.Supp. 901, 905 (D.N.H.1987) (where considerable delay exists, the burden shifts to the movant to show a valid reason for the Court to excuse the delay). Moreover, the Court "must weigh good cause shown for the delay in moving *vis-a-vis* dilatoriness of counsel resulting in last minute surprise and inability of opposing counsel to meet the 'tendered issue.'" *Evans v. Syracuse City School District*, 704 F.2d 44, 47 (2d Cir.1983) (*quoting Nevels v. Ford Motor Co.*, 439 F.2d 251, 257 (5th Cir.1971)).

▄ Here, Plaintiff asserts that the delay in bringing the motion to amend was due to the fact that evidence adduced during discovery established heretofore unknown warranty claims. However, Plaintiff fails to state, in either specific or general terms, what evidence was discovered that prompted the additional warranty claims. Although Plaintiff does not state the fact outright, the Court is left to assume that the warranty claims were not known at the time the original Complaint, or first Amended Complaint, was filed. Of course, to assume otherwise would place Plaintiff in the awkward position of justifying its delay by stating it simply "overlooked" the warranty claims.

Regardless, Plaintiff's justification is unavailing. It is unavailing because the basis of Plaintiff's negligence and strict liability claims—that there was a defect in the aircraft—must necessarily be the basis for Plaintiff's breach of warranty claims. To wit, Plaintiff's warranty claim is premised on the assertion that the aircraft was defective at the time it was manufactured/sold: different legal theories, same basic factual assertion.

In addition, in this instance we have an inordinate delay and a real likelihood of last minute surprise. Plaintiff's original complaint was filed on October 21, 1994. An Amended Complaint was filed on December 20, 1995. The time to file amendments expired on December 31, 1995, and discovery closed on April 15, 1996. Plaintiff's current Motion to Amend is well outside this Court's Pretrial Scheduling Order.

▄ Consequently, Plaintiff has not met its burden in explaining the delay in seeking to further amend its Complaint. As Defendant correctly notes, in addressing prejudice to the nonmoving party, the Second Circuit has stated that "'[t]he longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice.'" *Evans*, 704 F.2d at 47 (*quoting Advocat v. Nexus Indust., Inc.*, 497 F.Supp. 328, 331 (D.Del.1980)).

In determining what constitutes "prejudice," we consider whether the assertion of the new claims would: "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir.1993); *see also Tokio Marine & Fire Ins. Co. v. Employers Ins. of Wausau*, 786 F.2d 101, 103 (2d Cir.1986).

Here, plaintiff has brought its Motion to Amend on the eve of trial. Because additional discovery relating to the Proposed Amended Complaint would occasion delay in the trial date which is currently set for November 19, 1996, the Court finds that there is sufficient prejudice to justify denial of the motion to amend. *Accord, Vac Serv. Corp. v. Service Merchandise Co.*, 1996 WL 625423, at *1 (S.D.N.Y.1996); *Barrows v. Forest Laboratories, Inc.*, 742 F.2d 54 (2d Cir.1984) (district court properly denied motion to amend where new claims significantly expanded discovery at a time when the case was almost ready for trial). *Cf. Johnson v. State*, 1996 WL 10106, at *1 (2d Cir.), *cert. denied*, — U.S. —, 116 S.Ct. 1578, 134 L.Ed.2d 675 (1996) (affirming district court's decision that delaying trial that was scheduled to commence within five and a half months was prejudice sufficient to justify the denial of a motion to amend) (unpublished opinion).

## III. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is GRANTED IN PART and DENIED IN PART dismissing Plaintiff's Second Cause of Action only.

Furthermore, Plaintiff's Cross–Motion to Amend the Complaint is DENIED.

**IT IS SO ORDERED.**