**CHAMPLAIN ENTERPRISES, INC.,**
**d/b/a Commutair, Plaintiff,**

v.

**UNITED STATES of America and Beech**
**Aircraft Company, Defendants.**

No. 94–CV–1356.

United States District Court,
N.D. New York.

March 6, 1997.

Kroll & Tract, New York City, for Plaintiff; William C. Brown, counsel.

Roemer, Wallens & Mineaux, L.L.P., Albany, NY, for Defendant Beech Aircraft Corp.; Matthew J. Kelly, of counsel.

## MEMORANDUM–DECISION & ORDER

McAVOY, Chief Judge.

## I. BACKGROUND

This dispute arises from the crash of CommutAir Flight 4821. The facts of this case are more fully set forth in this Court's previous Memorandum–Decision and Order dated November 16, 1996. *See Champlain Enterprises v. United States, Beech Aircraft,* 945 F.Supp. 468 (N.D.N.Y.1996). Briefly, on January 3, 1992, Flight 4821 was on approach to Adirondack Airport in Saranac Lake, New York. It struck a mountain approximately 4.3 miles short of the runway and was destroyed. Two persons died and two persons survived the crash.

Plaintiff, a New York corporation, is the owner/operator of the aircraft that crashed. By Order dated October 15, 1996, this Court granted co-defendant United States' Motion for Summary Judgment and dismissed all claims against the United States in this action. *See Champlain Enterprises v. U.S., Beech Aircraft,* 1996 WL 650700 (N.D.N.Y. 1996). In addition, by Order dated November 16, 1996, this Court dismissed Plaintiff's negligence cause of action, leaving only Plaintiff's Third Cause of Action sounding in strict liability. *See Champlain,* 945 F.Supp. at 468.

Currently pending are defendant Beech Aircraft's Motions In Limine seeking: (1) judgment as a matter of law on the basis that Kansas statutory law provides an affirmative defense for products that are manufactured pursuant to governmental regulations; (2) judgment as a matter of law because there is no evidence that precipitation static ("P-stat-ic") interference played a role in this crash; (3) preclusion of expert testimony sought to be introduced by Plaintiff on the issue of P-static interference; (4) preclusion of any evidence concerning subsequent remedial measures, including any National Transportation Safety Board recommendations and subsequent changes to Beech Aircraft's maintenance manuals; and (5) judgment as a matter of law because the contract between the parties limits the remedies available to Plaintiff.

## II. DISCUSSION

### A. Judgment as a Matter of Law

Federal Rule of Civil Procedure 50(a) provides that a party may make a motion for judgment as a matter of law based on the evidence before the court. The Second Circuit stated the standard for granting a judgment as a matter of law in *Mattivi v. South African Marine Corp., "Huguenot",* 618 F.2d 163 (2d Cir.1980). In *Mattivi,* the court stated that

> the trial court cannot assess the weight of conflicting evidence, pass on the credibility of the witnesses, or substitute its judgment for that of the jury. Rather, after viewing the evidence in a light most favorable to the non-moving party (giving the non-movant the benefit of all reasonable inferences), the trial court should grant a [judgment as a matter of law] only when ... there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded men could not arrive at a verdict against him.

618 F.2d at 167–68; *see also Samuels v. Air Transport Local 504,* 992 F.2d 12, 14 (2d Cir.1993); *Mallis v. Bankers Trust Co.,* 717 F.2d 683, 688–89 (2d Cir.1983).[1] Rule 50 of the Federal Rules of Civil Procedure governs the procedure for granting judgment as a matter of law by motion made before the jury retires pursuant to Rule 50(a), or motion after the jury has spoken pursuant to Rule

---

1. While the 1991 amendments to Rule 50 abandoned the terms "directed verdict" and "judgment not withstanding the verdict" in favor of the more encompassing "judgment as a matter of law" terminology, the standard for granting the motions was not altered. *See* Fed.R.Civ.P. 50 Advisory Committee's note, 1991 Amendment.

50(b). Fed.R.Civ.P. 50; *see also Samuels, Inc.*, 821 F.2d 1438, 1443 (10th Cir.1987) ("Compliance is not dispositive under Kansas law if the plaintiff shows that a reasonable manufacturer would have done more.") On the other hand, if Plaintiff cannot prove that the Beech 1900C aircraft was unreasonably dangerous, then Beech is not liable in any event. Under either scenario Beech's statutory defense is irrelevant.

With this standard in mind, the Court will address Defendant's requests *seriatim.*

### B. Products Manufactured Pursuant to Governmental Regulations

■ The Kansas Products Liability Act states, in relevant part:

When the injury causing aspect of the product was, at the time of manufacture, in compliance with legislative regulatory standards or administrative regulatory safety standards relating to design or performance, the product shall be deemed not defective by reason of design or performance, . . . *unless* the claimant proves by a preponderance of the evidence that a reasonable prudent product seller could and would have taken additional precautions.

K.S.A. § 60–3304(a) (emphasis added).

Thus, in order to be entitled to this statutory defense, Beech must establish that the Beech 1900C aircraft was, at the time of manufacture, in compliance with legislative regulatory standards or administrative regulatory safety standards relating to design or performance. However, even if Beech establishes this compliance, Champlain can still obviate this defense if it proves, by a preponderance of the evidence, that a reasonable prudent product seller could and would have taken additional precautions.

The question of whether a reasonable prudent seller would have taken additional precautions is precisely the issue currently facing the parties at trial. As this Court stated in a prior decision in this case, where a party is seeking recovery for damage to the product itself, under Kansas law "unreasonable dangerousness consistently appears to be a prerequisite and touchstone to recovery in tort for damages caused by a defective product." *Champlain,* 945 F.Supp. at 474 (*quoting Daitom, Inc. v. Pennwalt Corp.,* 741 F.2d 1569, 1581 (10th Cir.1984)). Indeed, this is the only remaining issue in this case.

Thus, if Plaintiff can prove at trial that the Beech 1900C aircraft was unreasonably dangerous this statutory defense is inapplicable. *See, e.g., O'Gilvie v. International Playtex,*

Accordingly, Defendant's motion for judgment as a matter of law, based on Kansas statutory law providing an affirmative defense for products that are manufactured pursuant to governmental regulations, must be denied.

### C. P-static Interference

Defendant also seeks judgment as a matter of law on the basis that there is no evidence that P-static interference played a role in this crash. In addition, Defendant seeks preclusion of expert testimony sought to be introduced by Plaintiff on the issue of P-static interference.

Insofar as Defendant's requested relief turns on a determination that Plaintiff has failed to present sufficient evidence of P-static interference, this Court will not now address the sufficiency of Plaintiff's evidence. Instead, pursuant to Fed.R.Civ.P. 50 the Court will reserve on this issue until the close of evidence at trial.

As to Defendant's requested preclusion of expert testimony, it is not clear what, if any, expert testimony the Plaintiff intends to offer at trial. Accordingly, the Court will also reserve on this issue until trial.

### D. Evidence of Subsequent Remedial Measures

Beech also seeks preclusion of any evidence concerning subsequent remedial measures, including any National Transportation Safety Board recommendations and subsequent changes to Beech Aircraft's maintenance manuals.

Defendant correctly notes that Section 60–3307 of the Kansas Product Liability Act states that the following evidence shall not be admissible:

Evidence of any changes made in the designing, planning, formulation, testing, preparing, manufacturing, packaging, warnings, labeling, or instructions for use of, or with regard to, the product in issue or any similar product, which changes were made subsequent to the time the product in issue was designed, formulated, tested, manufactured, or sold by the manufacturer.

K.S.A. § 60–3307(a). However, Defendant fails to quote the following exception, under subsection (b), which states that "[t]his section does not require the exclusion of evidence of a subsequent measure if offered to impeach a witness for the manufacturer or seller of a product who has expressly denied the feasibility of such a measure." K.S.A. § 60–3307(b); see, e.g., Blackburn, Inc. v. Harnischfeger Corp., 773 F.Supp. 296, 303 (D.Kan.1991) ("K.S.A. 60–3307, however, prohibits the use of such evidence 'for any purpose' other than to controvert a claim of infeasibility").

■ Plainly, evidence that Beech Aircraft made changes to its maintenance manuals would be barred by the Kansas Product Liability Act *unless* Plaintiff offers that evidence on the issue of feasibility. Accordingly, the Court will order that Plaintiff is precluded from offering evidence of any changes to Beech's maintenance manuals, subject to the limited exception concerning the issue of feasibility.

Turning to Defendant's requested preclusion of any NTSB recommendations, the Court notes that there is some disagreement among courts as to what, if any, portions of an NTSB report are admissible. *Compare* 49 App.U.S.C. § 1441(e) ("No part of any report or reports of the National Transportation Safety Board relating to any accident or the investigation thereof, shall be admitted

as evidence. . . ."), *Israel v. U.S.*, 247 F.2d 426, 429 n. 2 (2d Cir.1957) (finding NTSB report inadmissible in airplane accident cases), and *Keen v. Detroit Diesel Allison*, 569 F.2d 547 (10th Cir.1978) (same), *with Curry v. Chevron, U.S.A.*, 779 F.2d 272, 274 (5th Cir.1985) (allowing admission of factual portions, but not conclusive statements) and *Travelers Insurance Co. v. Riggs*, 671 F.2d 810, 816 (4th Cir.1982) (same).

In light of this unsettled issue, and because the Court does not have before it the specific portions of the NTSB report sought to be admitted by Plaintiff, the Court will reserve on the admissibility of any NTSB findings and recommendations.

## E. Remedies Available to Plaintiff

Finally, Defendant seeks judgment as a matter of law on the basis that the contract between the parties limits the remedies available to Plaintiff. Specifically, Defendant argues that the contract of sale contained a limited warranty indicating that Plaintiff was agreeing to limit its remedy for damages to a breach of warranty claim and that it was waiving any claim based on a theory of negligence or strict liability in tort.

■ Kansas has adopted the Uniform Commercial Code. Under the Kansas UCC, this type of limitation is valid under Kansas law if it satisfies the requirements of Kan. Stat.Ann. § 84–2–719(1), and is not unconscionable under § 84–2–719(3).[2] *See Delhomme Industries, Inc. v. Houston Beechcraft, Inc.*, 669 F.2d 1049, 1062 (5th Cir.1982). As stated by the Kansas Supreme Court in *Kansas City Structural Steel Co. v. L.G. Barcus & Sons*, 217 Kan. 88, 535 P.2d 419 (1975):

---

2. K.S.A. § 84–2–719 states:

(1) Subject to the provisions of subsections (2) and (3) of this section and of the preceding section on liquidation and limitation of damages, (a) the agreement may provide for remedies in addition to or in substitution for those provided in this article and may limit or alter the measure of damages recoverable under this article, as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of nonconforming goods or parts; and (b) resort to a remedy as provided is

optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy.

(2) Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this act.

(3) Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not.

The policy of the law in general is to permit mentally competent parties to arrange their own contracts and fashion their own remedies where no fraud or over-reaching is practiced. Contracts freely arrived at and fairly made are favorites of the law.

217 Kan. at 95, 535 P.2d at 424 (citation omitted).

■ However, this is not to say that every contractual limitation will automatically be given full effect. Instead, where a limited remedy fails of its essential purpose, a party will not be so limited. *See Delhomme Industries*, 669 F.2d at 1062 (if "manufacturer's limited remedy 'faile[d]' of its essential purpose" under Kan.Stat.Ann. § 84–2–719(2) [then buyer] would not be limited to the manufacturer's limited remedy, but could instead go beyond it and recover damages"); *Elite Professionals, Inc. v. Carrier Corp.*, 16 Kan.App.2d 625, 827 P.2d 1195 (1992). The official UCC Comments to K.S.A. § 84–2–719 state:

[I]t is of the very essence of a sales contract that at least minimum adequate remedies be available. If the parties intend to conclude a contract for sale within this Article they must accept the legal consequence that there be at least a fair quantum of remedy for breach of the obligations or duties outlined in the contract.... [U]nder subsection (2), where an apparently fair and reasonable clause because of circumstances fails in its purpose or operates to deprive either party of the substantial value of the bargain, it must give way to the general remedy provisions of this Article.

(Emphasis added.)

In *Elite Professionals, Inc. v. Carrier Corp.*, the Kansas Court of Appeals faced a situation where a manufacturer was unable to make a needed repair before extensive damage occurred. 16 Kan.App.2d 625, 827 P.2d 1195. After examining Kansas law on the issue of remedies, the Kansas appellate court stated:

We conclude that the fact that the seller is first given the opportunity to repair or replace after the harmful occurrence does not, standing alone, bar recovery for fail-

ure of essential purpose at least in those instances where the outcome of the repair or replacement leaves the user in the position of one who has been afforded an unconscionably inadequate remedy, that is, where the user has not been afforded a reasonably "fair quantum of remedy."

*Elite Professionals*, 16 Kan.App.2d at 638, 827 P.2d at 1205.

The *Elite Professionals* court also cited with approval a Wisconsin court that was faced with a situation similar to the case at bar. *See Phillips Petroleum v. Bucyrus–Erie Co.*, 131 Wis.2d 21, 388 N.W.2d 584 (1986). In *Phillips Petroleum*, a manufacturer used substandard steel in the fabrication of parts for cranes used in off-shore oil drilling. After the parts failed, one crane fell into the sea, and the company was prohibited from using the remaining cranes until the defective parts were replaced. *Phillips Petroleum*, 131 Wis.2d at 24–25, 388 N.W.2d 584. The Wisconsin court noted that the purpose of any damage award is to make the injured party whole, and while replacement of a defective part will often suffice, it did not in that case. *Phillips Petroleum*, 131 Wis.2d at 39, 388 N.W.2d 584. The court further noted that replacement of the parts only "minusculely compensated the purchaser." *Phillips Petroleum*, 131 Wis.2d at 39, 388 N.W.2d 584. The Wisconsin court found it "apparent that the remedy offered by [the] contract ... provides damages that are, in the circumstances, unconscionably low." *Phillips Petroleum*, 131 Wis.2d at 39, 388 N.W.2d 584.

Moreover, as the Kansas Court of Appeals has stated, "[w]hether the remedy failed in this case is a question of fact and should not have been decided on summary judgment." *Elite Professionals*, 16 Kan.App.2d at 638, 827 P.2d at 1205 (*citing* 5 Anderson, Uniform Commercial Code § 2–719:29 (1984)). Other courts have ruled similarly. For example, in *Delhomme Industries, Inc. v. Houston Beechcraft*, 669 F.2d 1049, 1063 (5th Cir. 1982), the court, applying Kansas law, stated the determination of a claim under K.S.A. § 84–2–719(2) is a question of fact rather than one of law. In *Erie County Water Auth., Etc. v. Hen–Gar Const.*, 473 F.Supp.

1310, 1315 (W.D.N.Y.1979), the court stated that more factual development was necessary, which precluded summary judgment on the issue of whether the limited replacement or repair remedy had failed of its essential purpose.

Here, Beech's proffered limited warranty states that "[t]he entire extent of Beech's liability shall be limited to that of either repairing the defective part or providing a new or rebuilt-to-zero-time replacement part." (Def's Motion In Limine, Exh. A, "1990 Airliner New Airplane Warranty"). Clearly, a reasonable juror could conclude that requiring Beech to merely provide a new part when the entire aircraft has been destroyed, "operates to deprive [Plaintiff] of the substantial value of the bargain." *See* K.S.A. § 84-2-719, Official Comments.

Accordingly, Defendant's motion for judgment as matter of law on the issue of remedies must be denied.

## III. CONCLUSION

In summary, Defendant's motion for judgment as a matter of law, based on Kansas statutory law providing an affirmative defense for products that are manufactured pursuant to governmental regulations, is DENIED. Defendant's request for judgment as a matter of law on the issue of P-static interference and for preclusion of evidence of P-static interference, are RESERVED. Defendant's motion for preclusion of other evidence is GRANTED IN PART; Plaintiff is precluded from offering evidence of any changes to Beech's maintenance manuals, subject to the limited exception concerning the issue of feasibility. The admissibility of any NTSB findings and recommendations is RESERVED. Finally, Defendant's motion for judgment as matter of law on the issue of remedies is DENIED.

**IT IS SO ORDERED.**